UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MICHAEL STEPHENS,

    Movant,

v.                               **Case No.: 8:21-cv-2807-CEH-CPT**
                               **Crim. Case No. 8:18-cr-376-CEH-CPT**


UNITED STATES OF AMERICA,

    Respondent.

_____/

## ORDER

Before the Court is Michael Stephens's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 1) The United States filed a response in opposition. (Doc. 13). Stephens did not file a reply, and the time frame for doing so has expired. (*See* Doc. 2 at 3). After reviewing the parties' submissions and the record, the Court will deny the Section 2255 motion.[1]

### I. STATEMENT OF FACTS[2]

Michael Stephens twice visited a Shooters World gun range location in September 2017, repeatedly firing a handgun on the range during both visits. (Cr-Doc. 52 at 2). Additionally, during one visit, Stephens purchased various types of

---

[1]   The motion can be denied without the need for an evidentiary hearing, as no hearing is required when the record establishes that a Section 2255 claim lacks merit. *See United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984).

[2]   The Statement of Facts derives from the United States' Factual Basis. (Cr-Doc. 52 at 2–5).

ammunition. (*Id.*). Several weeks later, he posted videos to Facebook of himself shooting a gun at Shooters World. (*Id.*). In April 2018, Stephens was with another individual in a car when he fired multiple rounds at another vehicle. (*Id.* at 3). Stephens discarded the gun when law enforcement tried to stop the vehicle. (*Id.*). Law enforcement found the gun fully loaded with Stephens's DNA on the trigger. (*Id.*). The firearms he possessed in September and April had traveled in interstate or international commerce. (*Id.* at 3–4). Before Stephens possessed the gun in September 2017, he had been previously convicted of various felonies punishable by over one year in prison. (*Id.* at 4).

## II. BACKGROUND AND PROCEDURAL HISTORY

Stephens was charged by indictment with possession of a firearm and ammunition by a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Cr-Doc. 13).[3] Stephens faced an enhanced sentence under the Armed Career Criminal Act ("ACCA") due to his prior convictions. (*Id.*). He pleaded guilty to both counts without a plea agreement. (Cr-Doc. 59). During the plea hearing, Stephens affirmed for the magistrate judge that he reviewed the facts with his counsel, that they had discussed Stephens's options, and that he was "fully satisfied" with counsel's advice and representation. (*Id.* at 9). Stephens also affirmed that no one

---

[3] References to filings in criminal case number 8:18-cr-376-CEH-CPT are cited as "Cr-Doc. [document number]." Pinpoint citations to electronically filed documents refer to the docket number followed by the page number that appears in the header generated by the court's electronic filing system.

threatened or promised him anything in exchange for his guilty plea. *(Id.* at 10). He acknowledged that he understood he faced a mandatory minimum 15-year sentence for each count. (*Id.* at 12). He also understood that he could not withdraw his guilty plea if counsel's sentencing estimate were incorrect. (*Id.* at 14–15).

Stephens stated he had no questions about the charges or the elements of the offenses. (*Id.* at 16–19). After the United States recited the facts of the case, Stephens agreed that he possessed a firearm and ammunition on a specific date; that the gun and ammunition previously traveled in interstate commerce; that he was previously convicted of a felony punishable by more than one year in prison; and that his civil rights were not restored before the firearm possession. (*Id.* at 20–24). Although Stephens agreed with the listed felony convictions, defense counsel wanted to "preserve any objections" to the ACCA enhancement. (*Id.* at 25). The magistrate judge found a factual basis for the charges and determined that Stephens entered his guilty plea knowingly and voluntarily. (*Id.* at 29). This Court then adjudicated Stephens guilty. (Cr-Doc. 67).

Stephens qualified as an Armed Career Criminal ("ACC") based on three prior Florida convictions for: aggravated assault-firearm possession, possession of cocaine with intent to sell or deliver, and delivery of cocaine. (Cr-Doc. 79 ¶¶ 23–24 (Presentence Investigation Report ("PSR") dated June 26, 2019); *see also* Doc. 13, Attachment A (certified copies of convictions)). He faced an advisory guidelines range of 188 to 235 months' imprisonment. (*Id.* ¶ 89). Stephens did not object to the PSR. (*Id.* at 28).

At sentencing, this Court adopted the United States Probation Office's guidelines calculation without objection from the parties. (Cr-Doc. 96 at 6). Relying on various mitigating factors, defense counsel asked for a 180-month sentence. (*Id.* at 10–11). This Court ultimately sentenced Stephens to serve 195 months in prison. (Cr-Doc. 85). Stephens did not pursue a direct appeal.

In his Section 2255 motion, Stephens claims that he is actually innocent of his ACCA sentencing enhancement in light of the Supreme Court's subsequent decision in *Borden v. United States*, 593 U.S. 420, 141 S. Ct. 1817, 210 L. Ed. 2d 63 (2021) (Ground One). (*See generally* Doc. 1). Based on that decision, Stephens also claims that this Court lacked jurisdiction to impose the ACCA-enhanced sentence (Ground Two) and violated his due process rights (Ground Three). (*See generally* Doc. 1).

This Court observes that Stephens moved to amend his Section 2255 motion to include a claim that his prior Florida controlled-substance convictions do not support his ACCA enhancement in light of *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022) ("*Jackson I*"), *vacated*, 2022 WL 4959314 (11th Cir. Sept. 8, 2022), *superseded*, 55 F.4th 846 (11th Cir. Dec. 13, 2022) ("*Jackson II*"), *and cert. granted*, 143 S. Ct. 2457 (2023) (Ground Four). (*See* Doc. 5). This Court granted Stephens's motion and directed him to file an amended Section 2255 motion. (Doc. 10). Stephens failed to do so. Nonetheless, in an abundance of caution, this Court will only address the claims raised in Stephens's initial 28 U.S.C. § 2255 motion (Doc. 1) and his motion to amend (Doc. 5).

For the reasons argued by the United States, Stephens's claims are each untimely, procedurally defaulted, or without merit.

### III. SECTION 2255 MOTION

#### A. Timeliness

Section 2255(f) requires a claim-by-claim assessment to determine timeliness. *See Beeman v. United States*, 871 F.3d 1215, 1219 (11th Cir. 2017). Section 2255(f)(3) provides a one-year limitations period that begins on "the date on which the right asserted was initially recognized by the Court, if that right has been newly recognized by the Court and made retroactively applicable to cases on collateral review." Section 2255(f)(3)'s "'new right' trigger applies to Supreme Court decisions recognizing new, retroactively applicable statutory rights." *Zack v. Tucker*, 704 F.3d 917, 925 (11th Cir. 2013) (en banc) (citing *United States v. Roberts*, 308 F.3d 1147, 1149–50 (11th Cir. 2002). Any court, including a district court, can decide whether that right is retroactive. *See Dodd v. United States*, 365 F.3d 1273, 1280–81 (11th Cir. 2004), *aff'd on other grounds*, 545 U.S. 353 (2005).

In *Borden*, on which Stephens relies for Grounds One through Three of his Section 2255 motion, the Supreme Court held that a criminal offense with a mens rea of recklessness does not qualify as a "violent felony" under the ACCA. *Borden*, 141 S. Ct. at 1821–22. *Borden* announced a new rule of constitutional law retroactively applicable to cases on collateral review under section 2255(f)(3). A movant raising a *Borden* claim that is filed more than a year after his judgment became final is timely

5

under section 2255(f)(3), so long as it was filed on or before June 10, 2022, the one-year anniversary of the *Borden* decision. *See Dodd v. United States*, 545 U.S. 353, 357–58 (2005). Stephens timely raised his *Borden* claims in his Section 2255 motion dated November 19, 2021. (Doc. 1 at 12).

However, the *Jackson* claim that Stephens raised in his motion to amend his Section 2255 motion is not timely under section 2255(f)(3) because *Jackson* is not a Supreme Court decision recognizing a newly retroactive right. Therefore, Stephens can only proceed on that claim if he can prove timeliness under section 2255(f)(1), which states that the one-year time limitation runs from the date on which the judgment of conviction became final. He cannot do so. The time guaranteed to Stephens under section 2255(f)(1) expired on July 17, 2020—one year from when the 14 days for filing a notice of appeal from Stephens's July 3, 2019 judgment of conviction lapsed. Fed. R. Crim. P. 4(b)(1)(A)(i). Stephens raised his *Jackson* claim on January 11, 2023—nearly three years after his deadline expired. (Doc. 5 at 2). *See Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001) (pleadings filed by an incarcerated petitioner are deemed filed on the date they were placed into the prison's official mail system). Therefore, Stephens's *Borden* claims are timely, but his *Jackson* claim is denied as untimely.

**B. Procedural default**

Stephens did not raise the substance of his *Borden* and *Jackson* challenges on direct appeal. "[A] collateral challenge may not do service for an appeal." *United States*

*v. Frady*, 456 U.S. 152, 164–65 (1982). "Once the defendant's chance to appeal has been waived or exhausted," courts "are entitled to presume that [the defendant] stands fairly and finally convicted." *Id.* As a result, claims that previously were available yet were not raised in a prior proceeding are procedurally defaulted and ordinarily are barred from consideration on collateral review. *Bousley v. United States*, 523 U.S. 614, 622–24 (1998). To obtain collateral relief based on trial errors that were not objected to at the trial or raised on direct appeal, a defendant must show both cause that excuses his double procedural default and actual prejudice resulting from the errors of which he complains. *Frady*, 456 U.S. at 167–68. Alternatively, a defendant may obtain collateral relief despite a procedural default by establishing actual innocence. *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).

The cause-and-prejudice standard requires Stephens to show not only that "some objective factor external to the defense" impeded his efforts to raise the issue earlier, *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), but also that the error he alleges "worked to his actual and substantial disadvantage, infecting his entire trial with error," *Frady*, 456 U.S. at 170. Because the standard requires a movant to establish both cause and prejudice, a reviewing court need not assess both prongs if it concludes that the proof of either is insufficient. *Id.* at 168.

### *Cause and prejudice*

Stephens does not explain why he did not raise his claims earlier. (*See generally* Docs. 1 at 4–8; Civ. Doc. 5). The Eleventh Circuit has held that "[i]n procedural

default cases, the question is not whether legal developments or new evidence have made a claim easier or better, but whether at the time of the direct appeal the claim was available at all." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004; *accord Smith v. Murray*, 477 U.S. 527, 537 (1986). Perceived futility in raising a claim based on the belief that the court of appeals would reject it does not constitute cause excusing a procedural default. *Sunal v. Large*, 332 U.S. 174, 181–82 (1947); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001).

The decisions in *Borden* and *Jackson* were not so novel that the substance of Stephens's claims would not have been reasonably available to his counsel. *See Reed v. Ross*, 468 U.S. 1, 16 (1984). The type of novelty required is more than a showing that circuit precedent foreclosed the claim at the time of direct review. *See Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982) ("futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time"); *see also Dugger v. Adams*, 489 U.S. 401, 409-10 (1989) (finding that a claim was not novel where "the legal basis for a challenge was plainly available"). Because no external impediment prevented Stephens from challenging the imposition of his ACCA enhancement or validity of his prior convictions in the district court or on direct appeal, and because such challenges were reasonably available to him at the time of his sentencing, he cannot demonstrate cause for his failure to raise the issue on direct appeal, and he is procedurally barred from challenging it collaterally now. *See McCoy*, 266 F.3d at 1259.

Even if Stephens could establish cause for his procedural default, he still would have to demonstrate that actual prejudice resulted. *See Frady*, 456 U.S. at 170. To establish actual prejudice, he "must shoulder the burden of showing, not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* As discussed below in the "Merits" section of this Order, Stephens cannot prove prejudice because his convictions continue to support his ACCA designation.

### *Actual innocence*

Because Stephens has not demonstrated cause and prejudice, he must establish actual innocence to overcome the procedural default of his *Borden* and *Jackson* claims. The actual-innocence exception to the procedural-default rule is, however, a "'safety valve' for the 'extraordinary case'" to prevent a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 333 (1995). The Supreme Court has "often emphasized 'the narrow scope' of the exception." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *see Schlup*, 513 U.S. at 321 ("rare" and applicable only to the "extraordinary case"); *Sawyer v. Whitley*, 505 U.S. 333, 341 (1992) ("very narrow"). Indeed, the Court tied the exception to the movant's innocence to ensure that the exception would allow relief only for the "truly deserving." *Schlup*, 513 U.S. at 321. The Supreme Court has applied the actual innocence exception in only two contexts: claims of actual

9

innocence of the crime of conviction and claims of actual innocence of a capital sentence. *See Sibley v. Culliver*, 377 F.3d 1196, 1205–06 (11th Cir. 2004).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. To show actual innocence of the crime of conviction, a movant "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of the new evidence of innocence. *Schlup*, 513 U.S. at 327. The "prototypical example of 'actual innocence' in a colloquial sense is the case where the government has convicted the wrong person of the crime." *Sawyer*, 505 U.S. at 349. A claim of legal innocence—for example, that the movant "was erroneously sentenced as a career offender because one of his prior convictions does not qualify as a 'crime of violence'"—does not suffice and cannot excuse a procedural default. *McKay*, 657 F.3d at 1199. Stephens does not contend that he is factually innocent of his offenses of conviction. Therefore, his *Borden* and *Jackson* claims are denied as procedurally barred.

### C. Merits Analysis

Under the ACCA, a defendant is subject to a 15-year mandatory minimum term of imprisonment where that defendant has been previously convicted of three prior convictions for a "violent felony" or a "serious drug offense." *See* 18 U.S.C. § 924(e). A violent felony includes any crime punishable by imprisonment for a term exceeding one year, that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of

physical injury to another. 18 U.S.C. § 924(e)(2)(B)(i)–(ii). The term "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act ["CSA"] (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii); *see Jackson II*, 55 F.4th at 849.

### The Borden claims (Grounds One through Three)

In *Borden*, the Supreme Court held that an offense that may be committed recklessly lacks a mens rea element sufficient to satisfy the definition of a "violent felony" under the elements clause of the ACCA. 141 S. Ct. at 1834. Therefore, after *Borden*, an offense that can be committed by reckless causation of injury, and nothing more, does not satisfy the ACCA's elements clause.

In *Somers v. United States*, 66 F.4th 890 (11th Cir. 2023), however, the Eleventh Circuit held that "aggravated assault under Florida law requires a mens rea of at least knowing conduct and, accordingly, . . . it qualifies as an ACCA predicate offense under [*Borden*]." 66 F.4th at 892. Somers argued that his prior conviction for Florida aggravated assault with a deadly weapon could not serve as an ACCA predicate because it could have been committed with a mens rea of recklessness. *Id.* The Eleventh Circuit disagreed and held that aggravated assault under Florida law requires a mens rea of at least knowing conduct, which qualifies as an ACCA predicate conviction under *Borden*. *Id.* In so holding, the Eleventh Circuit relied on guidance from the Florida Supreme Court, which held that the first element of the assault

11

statute, section 784.011(1), Florida Statutes, requires not just the general intent to volitionally take the action of threatening to do violence, but also that the actor directs the threat at a target—another person. *Id.* at 893, relying on *Somers v. United States*, 355 So. 3d 887, 891–93 (Fla. 2022). In other words, the Florida Supreme Court held that the Florida assault statute demands the specific intent to direct a threat at another person and cannot be violated by a reckless act. *Somers*, 355 So. 3d at 892–93.

Stephens also challenges this Court having deemed his conviction for aggravated assault a predicate offense for the ACCA sentencing enhancement. But, as established by *Somers*, Stephens's aggravated assault conviction categorically qualifies as a violent felony under the ACCA. Furthermore, because Stephens has at least three qualifying ACCA predicates, his claim challenging this Court's jurisdiction to impose the enhancement and violation of his due process rights fails. Grounds One through Three of Stephens's Section 2255 motion are, therefore, denied as meritless.

### *The Jackson claim (Ground Four)*

Under the ACCA, a defendant convicted of a § 922(g) offense faces a 15-year minimum sentence and a maximum term of life imprisonment if he possesses a firearm or ammunition following three felony convictions for a "violent felony," a "serious drug offense," or a combination of both, "committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1). As relevant here, the term "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802) ("CSA"), for which a

maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). By its terms, therefore, the ACCA's definition of a serious drug offense is tied to the federal drug schedules in the CSA. *See Jackson II*, 55 F.4th at 849. But, because the CSA "authorizes the Attorney General to remove any drug or other substance from the schedules if he finds that the drug or other substance does not meet the requirements for inclusion in any schedule[,]" the drug schedules are subject to revision. *Id.* at 851 (quotation omitted).

In the *Jackson* cases, the Eleventh Circuit considered which version of the drug schedule ACCA's definition of a serious drug offense is incorporated: the one in effect when the defendant committed his firearm offense, or the one in effect when the defendant was convicted of his prior state drug offense. 55 F.4th at 851. Jackson, who had committed his firearm offense in 2017, had prior cocaine-related convictions under section 893.13(1), Florida Statutes, from 1998 and 2004. *Id.* at 850–51. When he committed those predicate Florida drug offenses, the federal and Florida drug schedules had included ioflupane, a cocaine derivative, as a controlled substance. *Id.* at 851. But in 2015, ioflupane was removed from the federal drug schedule due to its potential use in diagnosing Parkinson's disease. *Id.* According to Jackson, that change rendered his prior Florida cocaine-related convictions non-qualifying under the ACCA, because they included potential conduct—an offense involving ioflupane—that under the revised CSA was no longer criminal. *Id.*

While the panel in *Jackson I* at first agreed with Jackson, *see* 36 F.4th at 1303–1306, the Eleventh Circuit subsequently held that, under the Supreme Court's

13

reasoning in *McNeill v. United States*, 563 U.S. 816, 819–20 (2011), the ACCA's definition of a previous conviction for a "serious drug offense" is "backward-looking" and incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense. *See Jackson II*, 55 F.4th at 855–58 ("the ACCA is concerned with convictions that have already occurred, [so w]hether the prior conviction was for an offense 'involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance' can only be answered by reference to the law under which the defendant was convicted") (quoting *McNeill*, 563 U.S. at 820)). Otherwise, prior state drug convictions would be "erased or disappear for ACCA purposes when . . . the federal schedules at the time [the defendant] committed his firearm offense have omitted the substances that were federally controlled at the time of the prior state conviction." *Id.* at 858 (brackets and quotation omitted). Moreover, "the elements of and penalties for an offense underlying a previous conviction are set—that is, immutable—at the time of that conviction." *Id.* And, because a federal drug offense is defined to incorporate the version of the CSA (and thus the federal controlled-substances schedules) in effect at the time the defendant's federal drug conviction occurred, the ACCA's use of the CSA to define prior federal and state "serious drug offense[s]" also incorporates the federal drug schedules in effect at the time from the previous conviction. *Id.* at 858–59.[4]

---

[4]   The Supreme Court has since affirmed the decision in *Jackson II* in *Brown v. United States*, 144 S. Ct. 1195, 1201 (2024).

Under the holding in *Jackson II*, the only Florida cocaine-related drug convictions that may no longer be considered serious drug offenses under the ACCA are those for which a defendant was convicted after September 11, 2015, when the federal drug schedule was changed to eliminate ioflupane, *see Schedules of Controlled Substances: Removal of [123 I] Ioflupane from Schedule II of the Controlled Substances Act*, 80 Fed. Reg. 54715, 54715 (Sept. 11, 2015), and before July 1, 2017, when the Florida drug schedule was also amended, *see* 2017 Fla. Sess. Law Serv. Ch. 2017-110 (C.S.H.B. 505); *see also Jackson*, 36 F.4th at 1301–03 (providing history of schedule changes for ioflupane).

Stephens committed his Florida cocaine offenses on (1) March 28, 2009, and (2) May 20, 2015—both before September 11, 2015, when ioflupane was removed from the federal drug schedule. (*See* Doc. 13, Attachment at 6, 13). *Jackson II*, 55 F.4th at 857–59; *Jackson I*, 36 F.4th at 1301–03. In light of *Jackson II*, Stephens fails to prove he is innocent of his ACCA designation. Therefore, Ground 4, as presented in Stephens's motion to amend his Section 2255 motion (Doc. 5), is denied as meritless.

## IV. CONCLUSION

Stephens's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 1) is **DENIED**. To the extent Stephens presents an additional ground for relief in his motion to amend his Section 2255 motion (Doc. 5), that ground is also **DENIED**. The Clerk is directed to enter judgment against Stephens, to close this case, and to enter a copy of this order in the criminal action.

Stephens is not entitled to a certificate of appealability. To obtain a certificate of appealability, a petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linehan*, 279 F.3d 926, 935 (11th Cir. 2001). Because Stephens fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, he is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on April 7, 2026.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

*Copies to:*
Pro se Movant
Counsel of Record

16